UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
HASSAN KHAN,                                      :

                Movant,          :

            -against-                             :  **MEMORANDUM AND ORDER**

UNITED STATES OF AMERICA,      :       20-CV-945 (JSR) (KNF)
                                                                                        15-CR-804-1 (JSR)

                Respondent.  :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## BACKGROUND

      Hassan Khan ("Khan") made a motion "pursuant to 28 U.S.C. § 2255 to vacate his sentence in this matter based on the ineffective assistance of his defense counsel," Jeffrey Louis Greco ("Greco"), asserting that Greco failed to: (1) "develop critical mitigating facts, including cultural and religious context and psychological insight into Khan's sexual maturation process"; (2) "present the court with scientific research that could elucidate and mitigate Khan's offense"; (3) "develop the argument that the guideline calculation in the plea agreement and presentencing report overstated the severity of Khan's conduct"; and (4) "develop critical facts to counter the government's aggravating factor that Dr. Khan had caused severe emotional and physical damage to the victim." Khan's motion for an evidentiary hearing was granted. Before the Court is Khan's motion "for a subpoena *duces tecum* seeking discovery in connection with his 28 U.S.C. § 2255 petition, pursuant to Habeas Rule 6(a) and (b) of the Rules Governing Section

1

225[5][1] cases, Federal Rule of Criminal Procedure 26.2, and *Brady v. Maryland*, 373 U.S. 83 (1963)," opposed by the government.

## KHAN'S CONTENTIONS

Khan seeks from Greco, "under Habeas Rule 6":

• All time records relating to the Hassan Khan representation;
• All notes and memos to file relating to the Hassan Khan representation; and
• All email and written communications between Mr. Greco and others, including the Khan family, Mr. Khan, the government and other counsel or experts Mr. Greco consulted in connection with the case, including but not limited to Richard Krueger, Douglas Martinez and John Carney.

Khan seeks from the government, pursuant to Fed. R. Crim. P. 26.2 and Brady:

• All records of communications between Mr. Greco and the government relating to Hassan Khan's case, including letters, emails, voicemails, and any notes and memoranda memorializing such communications, from 2015 to the present (subject to valid assertions of the work-product doctrine).

Khan asserts that, although his was not a death penalty case, "he faced a minimum 10 years in custody and a sentencing guideline of 25 to 30 years in prison – a very long sentence range indeed for someone who had never had any previous contact with the criminal justice system." He contends that the government is obligated to produce Greco's prior statements pursuant to Fed. R. Crim. P. 26.2, which applies in this proceeding. In a footnote to his memorandum of law, Khan's counsel contends:

> The undersigned has conferred with A.U.S.A. Rossmiller, who has indicated his willingness to turn over this material the week before the hearing. The defense will reciprocate as to its witnesses, but we add that all prior statements between Petitioner and defense counsel regarding the matter are subject to the attorney-client privilege.

---

[1] Khan's notice of motion and memorandum of law assert, erroneously, that Khan seeks discovery "pursuant to Habeas Rule 6(a) and (b) of the Rules Governing Section 2254 cases." Section 2254 of 28 U.S.C. and related rules do not apply in this proceeding.

Furthermore, "the government is also obligated to turn over favorable material to the defense under the principles of *Brady v. Maryland*," which applies in this proceeding.

Khan contends that he has established good cause for disclosure because the issue in this proceeding is "the quality of Mr. Greco's sentencing advocacy, and, in particular, his mitigation advocacy." Concerning Khan's request for Greco's communications with the government, Khan asserts that, after the litigated bail proceeding, Greco "adopted a plea-bargaining strategy" and "negotiated a pre-indictment plea agreement, including a plea to an information" and containing a provision respecting Khan's right to seek a sentence below the applicable guideline of 25 to 30 years. "It is therefore, not an exaggeration to say that every communication Mr. Greco made to the government in his representation of Mr. Khan was related to Mr. Khan's sentencing and Mr. Greco's sentencing advocacy on behalf of Mr. Khan." Greco's communications with the government are relevant because, after the bail proceeding, "there was no further discovery or motion practice, and the entire defense strategy pivoted to the issue of negotiating a plea bargain that minimized Mr. Khan's sentencing exposure and permitted him to argue for a below-guidelines sentence." The plea bargaining "was effectively completed prior to Mr. Khan's initial appearance," and the government is "a powerful actor at sentencing." In this case, the government's role in sentencing was "particularly meaningful" since: (a) "the Probation Department sought to have Mr. Khan evaluated by its own approved expert in psychosexual evaluations, despite the fact that the defense had already had its expert conduct one, and such evaluation was ordered by the district court"; (b) "the government presented victim testimony at the sentencing proceeding, "; and (c) "the government advocated for a sentence substantially above 10 years." Khan contends that, in light of the government's role at sentencing, "any

communication between defense counsel and the government in a plea-bargained, non-cooperation case is a sentencing communication.  Indeed, what else could it be?"

## GOVERNMENT'S CONTENTIONS

The government opposes the motion, asserting that Khan failed to establish good cause for discovery, which is overly broad and has no bearing to this proceeding, and he failed to make citation to any specific factual allegation that any of the requested materials would support his petition.  Khan also failed to make citation to any cases establishing a precedent for such  broad discovery as is requested by this motion.  According to the government,

> [t]he only basis set forth by the defendant in support of his discovery requests are that the petition involves "the quality of Mr. Greco's sentencing advocacy, and, in particular, his mitigation advocacy," that it is "not an exaggeration to say that every communication Mr. Greco made to the government in his representation of Mr. Khan was related to Mr. Khan's sentencing and Mr. Greco's sentencing advocacy on behalf of Mr. Khan," and that "any communication between defense counsel and the government in a plea-bargained, non-cooperation case is a sentencing communication."

Contrary to Khan's contention, the government argues that "it is in fact a gross exaggeration to say that literally every communication made by defense counsel in a case that results in a guilty plea is related to sentencing."  The government asserts that this case involves a disputed bail hearing, in which defense counsel prevailed, thousands of pages of discovery production, a meeting between the government and Khan, Khan's counsel and his parents, addressing the government's evidence and an application to the government arguing that it should not proceed against Khan on the most serious charges in the complaint, following which the government agreed to issue a plea offer to one of the lesser charges, and plea bargaining in connection with the plea agreement.  Khan seeks every communication, note, letter and memo from both trial counsel and the government concerning all stages of the case, none of which is relevant to this proceeding.  Moreover, in connection with the specific allegations of ineffectiveness related to

sentencing, sentencing arguments are made to the court, not the government; thus, no basis exists to seek discovery from the government and Khan does not make any arguments asserting Greco's advocacy as to the government. Khan makes no citation to any case in which the government, rather than counsel or a third party, was ordered to produce its communications with defense counsel for the entirety of a case, especially where only a single, narrow aspect of counsel's representation was challenged. In light of the basis for this proceeding asserting what Greco did not do, such as not making the correct arguments to the court and not soliciting a second psychological evaluation for sentencing, as well as Greco's affidavit, the instant motion fails to argue that the materials sought would advance his claim, and no dispute exists about what Greco did or failed to do. Absent a very specific allegation that could give clearly rise to relief and given that the record is fully developed, no discovery is warranted.

## KHAN'S REPLY

Khan argues that the essence of the government's opposition "is the assumption that a defense lawyer's sentencing advocacy role is somehow tagged on at the end of a representation, and not fundamental to their role in a case that ended in a guilty plea. This assumption is erroneous." According to Khan, within weeks of starting Khan's representation, Greco was negotiating a plea deal with the government and "whether the context is bail advocacy, plea bargaining, seeking and reviewing discovery, or attending proffers," Greco was a sentencing advocate. Khan maintains that it is "impossible to analyze a lawyer's sentencing advocacy without analyzing all the communications (and absence of communications) upon which it was based." He asserts that he may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. "Greco's abdication of his advocacy role at sentencing, his failure to obtain additional psychological, psychiatric or mitigation reports, and worse, his invocation of the

image of a sociopath, rebut the usual presumption in *Strickland* cases that counsel's strategy was carefully considered." Thus, Khan has presented specific allegations that Greco "rendered ineffective sentencing advocacy."

Khan contends that "at least two New York federal courts have ordered disclosure in a habeas action of the precise category of documents sought here: the contents of the defense counsel's file," namely, "*Khalil v. United States*, 2011 WL 213468 (E.D.N.Y. Jan. 21, 2011)" and "*Capalbo v. United States*, 2012 WL 611539 (S.D.N.Y. February 24, 2012)." Both courts "relied upon Rule 1.16 of the New York Rules of Professional Conduct in finding that trial counsel was required to produce the contents of the defense file," and in both cases defense counsel's files were ordered to be produced so that the putative habeas petitioner could prepare or supplement his petition with ineffective assistance of counsel arguments. Moreover, no justification exists for withholding the attorney's work product, which the New York Court of Appeals found in "*Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 91 N.Y.2d 30, 3[6] (1997)," is not exempt from disclosure.

Khan asserts that his request that the government provide all communications between Greco and the government "is mostly duplicative of the same request made of Mr. Greco," but "ensures Mr. Khan has the full universe of his prior counsel's communications with the government regarding his case, and that there is a level playing field at the hearing." Khan argues that the cases on which the government relies are inapposite, as they do involve an evidentiary hearing or address "the narrow and tailored production request here: that Mr. Greco turn over specific contents of his defense file to Mr. Khan (time records, notes and memoranda to file, and copies of all communications with others regarding Mr. Khan's case), and that the government similarly turn over records of its communications with Mr. Greco." According to

6

Khan, the government's assertion that the discovery sought is widely overbroad is baseless and his discovery requests are narrow and limited, involving mostly email communications "easily retrievable via computer sorting and searching mechanisms." Furthermore, any notes or memoranda about which the government seeks to claim attorney-work product can be presented to the Court in camera, and "any unprivileged portions of the FBI 302 report describing the reverse proffer attended by Mr. Khan and his parents should be turned over to Mr. Khan in its entirety."

## GOVERNMENT'S SUR-REPLY

The government asserts that Khan raised two new arguments in his reply: (i) "that New York State courts and federal courts 'require' disclosure of the materials sought by the defendant"; and (ii) "that the *absence* of communications by Mr. Greco compels discovery," none of which has merit. According to the government, after failing to establish good cause for discovery based on specific allegations, Khan argues in reply that the New York Rules of Professional Conduct compel discovery of the entirety of counsel's file. However, Khan failed to show what aspects of the case file may not be currently in his possession, since Khan was represented by one counsel at the trial level and another on his unsuccessful appeal and the government is not aware of any claim for which appellate counsel lacked sufficient information to develop. The cases on which Khan relies do not compel discovery here because Khan does not assert that: (a) he could not remember the respects in which his counsel allegedly failed to provide effective assistance to him; and (b) he does not have access to publicly-filed materials. Moreover, Khan failed to make specific allegations about what discovery materials would purportedly advance his claim.

The government asserts that Khan's new argument that the lack of communications by defense counsel is central to his sentencing strategy misapplies the legal standard and suggests that "his discovery demand seeks to show a negative—*i.e.*, seeks to prove the absence of materials—demonstrates the lack of good cause shown," without citation to any legal authority in support of the proposition that discovery should be granted to show the absence of documents. The government contends that "a demand for discovery to show the non-existence of communications falls into the category of a kind of 'fishing expedition'" that does not warrant granting the motion.

## LEGAL STANDARD

"A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. "A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. "Before addressing whether petitioner is entitled to discovery under [Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts ('Rule 6')] to support his [constitutional violation] claim, [the court] must first identify the 'essential elements' of that claim." Bracy v. Gramley, 520 U.S. 899, 904, 117 S. Ct. 1793, 1797 (1997).

> A petitioner "bears a heavy burden in establishing a right to discovery." *Renis v. Thomas,* No. 02 Civ. 9256(DAB)(RLE), 2003 WL 22358799, at *2 (S.D.N.Y. Oct. 16, 2003) (citing *Bracy,* 520 U.S. at 904 [117 S.Ct. 1793] ). In order to show "good cause," a petitioner must present "'specific allegations'" that give the Court "'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Bracy,* 520 U.S. at 908–09 [117

8

> S.Ct. 1793] (quoting *Harris v. Nelson,* 394 U.S. 286, 300 [89 S.Ct. 1082, 22 L.Ed.2d 281] (1969) ). A court may deny a petitioner's request for discovery "where the petitioner provides no specific evidence that the requested discovery would support his habeas corpus petition." *Hirschfeld v. Comm'r of the Div. of Parole,* 215 F.R.D. 464, 465 (S.D.N.Y.2003); *see also Charles v. Artuz,* 21 F.Supp.2d 168, 170 (E.D.N.Y.1998). Generalized statements regarding the possibility of the existence of discoverable material will not be sufficient to establish the requisite "good cause." *See Gonzalez v. Bennett,* No. 00 Civ. 8401(VM), 2001 WL 1537553, at *4 (S.D.N.Y. Nov. 30, 2001); *Green v. Artuz,* 990 F.Supp. 267, 271 (S.D.N.Y.1998); *Munoz v. Keane,* 777 F.Supp. 282, 287 (S.D.N.Y.1991), *aff'd sub nom., Linares v. Senkowski,* 964 F.2d 1295 (2d Cir.1992).*Ruine v. Walsh,* 00 Civ. 3798(RWS), 2005 WL 1668855 at *6 (S.D.N.Y. July 14, 2005) (Sweet, D.J.).  Furthermore, "Rule 6 does not license a petitioner to engage in a 'fishing expedition' by seeking documents 'merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error.'" *Ruine v. Walsh, supra,* 2005 WL 1668855 at *6, quoting *Charles v. Artuz,* 21 F.Supp.2d 168, 169 (E.D.N.Y.1998).
>
> Pizzuti v. U. S., 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011).

To obtain relief on an ineffective assistance of counsel claim a movant must establish that his counsel's performance was: (1) deficient, such that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland v. Washington, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066 (1984); and (2) prejudicial so "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687, 104 S. Ct. at 2064.

## APPLICATION OF LEGAL STANDARD

### *Discovery Requested from the Government*

In the section styled "Argument" of his memorandum of law in support of the motion, Khan identifies the documents he seeks from Greco and the government and asserts, in a conclusory and self-serving fashion, that he established good cause for disclosure.  With respect to his discovery request directed to the government, Khan asserts without any legal authority in support, that the government is "a powerful actor at sentencing" and "any communication

9

between defense counsel and the government in a plea-bargained, non-cooperation case is a sentencing communication. Indeed, what else could it be?" Khan concedes in his reply that his request for discovery from the government "is mostly duplicative of the same request made of Mr. Greco," but asserts, in a conclusory manner and without citation to any legal authority in support, that it is needed because it "ensures Mr. Khan has the full universe of his prior counsel's communications with the government regarding his case, and that there is a level playing field at the hearing." Unlike in Lindsey v. Bradshaw, No. 1:03CV702, 2006 WL 840383 (S.D. Oh. March 30, 2006), on which Khan relies, Khan does not assert a Brady violation in his Section 2255 motion or that Greco rendered ineffective assistance to him during the culpability phase of the criminal action. Generalized and conclusory assertions unsupported by legal authorities are not sufficient to establish good cause to authorize discovery from the government where, as here, Khan concedes that it "is mostly duplicative of the same request made of Mr. Greco" and he fails to: (i) identify any discovery request from the government that is not duplicative of that requested from Greco; and (ii) make specific allegations with respect to any request directed to the government explaining how it would advance his claim. Accordingly, the Court finds that, in the circumstance of this case, Khan did not establish good cause to authorize discovery from the government.

*Discovery Requested from Greco*

Apart from the conclusory assertions in the "Argument" section of his memorandum of law that he established good cause for disclosure and Greco's mitigation advocacy is at issue in this case, Khan failed to make any argument in connection with his discovery requests from Greco. Khan's "Argument" section consists of four full paragraphs, none of which addresses specific requests directed at Greco or provides specific allegations that give the Court reason to

10

believe that Khan may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. Khan does not explain how Greco's time records are relevant to his claim of ineffective assistance of counsel based on the ground of Greco's alleged lack of mitigation advocacy or what element of the ineffective assistance of counsel claim they may tend to establish and how. No specific allegations are provided showing how "[a]ll notes and memos to file relating to the Khan representation" and "[a]ll email and written communications between Mr. Greco and others . . . in connection with the case" will be able to establish the elements of the ineffective assistance of counsel claim grounded on Greco's alleged lack of mitigation advocacy.

Khan asserts in his reply that Greco's "failure to obtain additional psychological, psychiatric or mitigation reports" and his "invocation of a sociopath, rebut the usual presumption in *Strickland* cases that counsel's strategy was carefully considered," without citation to any legal authority in support of that assertion. Khan failed to identify any part of his trial-level record to which he has no access or for which he is required but unable to pay docket fees. Khan does not identify any specific document that Greco failed to deliver to him at the end of his representation of Khan or how that document would advance his claim, and he does not assert that Greco breached his fiduciary duty to Khan. Khan's conclusory assertions without specific allegations that give the Court reason to believe that he may, if the facts are fully developed, be able to demonstrate that he is entitled to relief, are insufficient to satisfy his burden in establishing good cause that would entitle Khan to discovery under Rule 6. Accordingly, the Court finds that, in the circumstance of this case, Khan did not establish good cause to authorize discovery from Greco.

**CONCLUSION**

Fore the foregoing reasons, Khan's motion for discovery in connection with his 28 U.S.C. § 2255 motion, Docket Entry No. 14 (20-CV-945) and Docket Entry No. 81 (15-CR-804-1), is denied.

Dated:  New York, New York  
       January12, 2021

SO ORDERED:

_____  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE